# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Sandra K. Brandt,

                        Plaintiff,

                                              Civ. No. 09-1669 (RHK/AJB)
                                              **ORDER**

v.

Allina Health Systems Long-Term Disability
Benefit Plan, *et al.*,

                        Defendants.

      This matter is before the Court *sua sponte*.

      The parties in this ERISA case have cross-moved for summary judgment, with a hearing scheduled for June 30, 2010. The cross-Motions concern whether Plaintiff Sandra Brandt's long-term disability plan administrator, Life Insurance Company of North America ("LINA"), abused its discretion in denying her claim for benefits. The issues are complicated and, in the Court's view, the parties' voluminous briefs (more than 100 pages, plus dozens of exhibits) have left several important questions unanswered. Nevertheless, the Court has formed an initial impression of how the Motions should be resolved, subject of course to hearing from the parties at oral argument.

      The purpose of this Order is to advise the parties of the Court's "first take" on their Motions, so that they will be better prepared to address the Court's concerns at the hearing. More importantly, the Court believes that, based on its initial review of the record and the controlling law, the parties would be well served to attempt to resolve this

case by a settlement. The Court hopes that this Order will facilitate settlement discussions by informing the parties where it currently stands on the issues, so that they can most accurately assess their settlement postures.[1]

The administrative record lays bare the key facts. Brandt, who worked for Defendant Allina Health System as a hospice nurse, suffers from spherocytosis, a cellular problem that caused her to become anemic. Beginning in 2007, she began to suffer various symptoms, most notably extreme fatigue; her complaints were primarily physical. Eventually, following a splenectomy, dietary modifications and supplementation, and other treatments, her physical symptoms improved markedly, although they did not disappear.

Brandt stopped working in August 2007 and submitted a claim to LINA for LTD benefits, pointing to her fatigue and low endurance. In order to be entitled to benefits, the Plan required her to be unable to perform the material duties of her job continuously for a "benefit waiting period" of 90 days. Based on this waiting period, LINA denied her claim on December 19, 2007, concluding that her medical records did not support 90 days of continuous disability from August to November 2007. In the Court's (initial) view, that decision was appropriate – the records do not support the conclusion that Brandt was continuously unable to perform her job in late 2007 due to fatigue secondary to anemia

---

[1] Because the Court's analysis at this juncture is preliminary and because it has not yet heard argument from the parties, none of the findings recited below are intended to be final. Rather, they are based on the Court's current review of the parties' written submissions.

(or for any other reason).[2]

In time, however, Brandt's complaints morphed from physical concerns to psychological ones, and it is LINA's treatment of her claim during this later period that is more troubling. After her initial appeal was denied in March 2008, Brandt filed a second appeal and submitted a plethora of documents indicating that her primary complaints had evolved into significant mental, not physical, problems. Those documents, in the Court's view, tend to support her claim of impaired mental health resulting in a "disability."[3] Indeed, it does not appear that LINA seriously challenges that conclusion, as it notes that Brandt suffered a "mental collapse in May 2008." (Def. Resp. Mem. at 12.)

Nevertheless, the occupational-medicine physician who reviewed Brandt's second appeal (Dr. Richardson) in September 2008 opined that her medical records did not support the conclusion that she was unable to work. While his report indicated that he

---

[2] In particular, certain records from that time frame indicate that Brandt's anemia was minor or moderate and that she experienced great improvement in her symptoms with dietary modifications and supplementation. Her treating physicians recommended that she return to work on a limited basis before the 90-day waiting period expired, and Brandt did so. Although that return to work ultimately was unsuccessful, the records indicate that was because of psychological problems that were intensifying during the 90-day waiting period.

[3] Among other things, the records show that Brandt (1) was receiving ongoing treatment from a psychiatrist, a mental health nurse practitioner, and a social worker for depression, anxiety, bipolar/mood disorder, psychotic tendencies, somatization disorder, and difficulty with concentration and memory; (2) was asked by her husband to leave her home because of her erratic behavior; (3) voluntarily admitted herself to a psychiatric hospital for a period of eight days; (4) spent nine days at a mental-health crisis facility (the Maureen Heaney House) following her discharge from the psychiatric hospital; (5) had a decreased score on the "Global Assessment of Functioning" scale, indicating psychological impairment; and (6) was taking various medications to improve her mental functioning, with little success. Brandt's mental-health professionals opined on multiple occasions that she was unable to work given her mental status.

had been provided many of Brandt's medical records,[4] it included little discussion of her mental-health records and *nowhere* explained why they would not support a finding of disability. Indeed, the report said nothing more than Brandt's "Restrictions and Limitations are not supported in the documentation provided for review." LINA simply adopted that cursory opinion without analysis.

In the Court's view, the denial of Brandt's second appeal may well have been an abuse of discretion. LINA appears to take the position that Brandt's appeal was properly denied because she was not continuously disabled during the 90-day period *immediately* following the submission of her claim. In other words, anything occurring after the initial 90-day period was, in LINA's view, irrelevant to the appeal. (See, e.g., Def. Resp. Mem. at 12 (noting that Brandt's 2008 mental issues do not "provide any support for her claim that she was continuously disabled during the LTD Plan's benefits waiting period").) The Court does not believe that LINA was free to circumscribe its analysis in this fashion and ignore evidence of Brandt's later disabling mental-health problems. Rather, the Court believes that if Brandt became unable to work for more than 90 days for legitimate mental-health reasons sometime after the initial 90-day period ended, then she met the Plan's definition of "disability" and was entitled to benefits. See Willcox v. Liberty Life Assurance Co. of Boston, 552 F.3d 693, 701 (8th Cir. 2009) ("[E]liminating one potential cause of a claimant's disability may be insufficient to deny a claim if the symptoms are

---

[4] There is some dispute whether *all* of Brandt's records were provided to Dr. Richardson by LINA. The Court does not believe that dispute alters its analysis.

otherwise credible and other potential causes exist."); Atkinson v. Prudential Ins. Co. of Am., No. 3:05CV00140, 2006 WL 1663832, at *6 (E.D. Ark. June 14, 2006) ("[I]n reviewing a claim for disability benefits, a plan administrator must consider all relevant evidence submitted by a claimant and is not free to ignore evidence of a potentially disabling condition."). The records here suggest that Brandt was unable to work for much (if not all) of 2008 due to her mental problems, although the exact date of onset of such a "disability" is somewhat uncertain.

Several other factors also impact this conclusion. First, in determining whether an ERISA plan has abused its discretion, the Court must consider whether the plan administrator both determines eligibility for claims and pays those claims. See Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008). There is no dispute that is the case here, creating a "conflict" to which the Court must assign some weight.[5] Second, when reviewing a claim for benefits, a plan administrator must "consult with a health care professional who has appropriate training and experience in the field of medicine involved." 29 C.F.R. § 2560.503-1(h)(3)(iii), (h)(4). There is no evidence in the record

---

[5] Brandt correctly notes that this conflict takes on greater weight where there is evidence that the administrator has a history of biased claim decisions. See Glenn, 128 S. Ct. at 2351. Although there are several district-court decisions finding that LINA scoured the record looking for reasons to deny claims, acting "not as a fiduciary, but as an adversary," Gordon v. Nw. Airlines, Inc. Long-Term Disability Income Plan, 606 F. Supp. 2d 1017, 1041 (D. Minn. 2009) (Schiltz, J.); accord, e.g., MacNally v. Life Ins. Co. of N. Am., Civ. No. 07-4432, 2009 WL 1458275, at *25 (D. Minn. May 26, 2009) (Schiltz, J.); Juszynski v. Life Ins. Co. of N. Am., No. 06-CV-5503, 2008 WL 877977, at *12-13 (N.D. Ill. Mar. 28, 2008), the Court believes it is unnecessary *at this juncture* to conclude that LINA has a "history of biased claims administration," Glenn, 128 S. Ct. at 2351.

that Dr. Richardson, who apparently is board certified in occupational medicine, has any mental-health expertise. Third, a plan administrator "abuses its discretion when it ignores relevant evidence," such as by "failing to 'address . . . extensive medical evidence relating to [the claimant's] disability or the consistent conclusions of her doctors . . . that she could not work.'" Willcox, 552 F.3d at 701 (quoting Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 885 (8th Cir. 2002)). Here, Dr. Richardson's review of Brandt's medical records contains absolutely no analysis of her psychological problems or the opinions of her medical providers that she was unable to work as a result.

As the Court sees it, therefore, the record presages some level of victory and defeat for each party. While the Court believes, at this early juncture, that the record supports the conclusion that LINA abused its discretion in failing to account for Brandt's mental-health problems, this might prove a Pyrrhic victory – the Plan restricts disability benefits for mental-health problems to two years of payments, meaning any benefits to which she may be entitled are somewhat limited. Moreover, the Court does not find support for Brandt's assertion that she is entitled to disability benefits beginning in November 2007. Based on its preliminary review of the parties' submissions, the Court believes that Brandt's medical issues at that time did not suggest she was disabled; only after her mental-health problems worsened in 2008 did she satisfy the Plan's definition of disability.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that counsel for the parties should be prepared to address the issues set forth

above at oral argument.[6]

However, the Court *strongly* urges the parties to resolve this matter in advance of oral argument, as it believes a negotiated settlement would be in their best interests. Indeed, if the Court were to determine that LINA abused its discretion in denying Brandt's claim, it would likely conclude that the appropriate remedy would be remand to LINA to consider whether her mental-health issues rendered her disabled in 2008. See, e.g., Abram v. Cargill, Inc., 395 F.3d 882, 886-88 (8th Cir. 2005) (suggesting that appropriate remedy is remand where plan failed to consider all possible causes of claimant's disability), superseded on other grounds as recognized by Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887 (8th Cir. 2009); Nessell v. Crown Life Ins. Co., 92 F. Supp. 2d 523, 527 (E.D. Va. 2000) ("[P]lan fiduciaries, not the federal courts, . . . have primary responsibility for claim processing."). That would inevitably cause further delay and, if benefits were to again be denied, yet another appeal. A settlement, while perhaps affording neither side complete relief, would at least bring this four-year legal odyssey to an end.

The Court is willing to cancel the hearing on the parties' cross-Motions, if requested, in order to afford them additional time to discuss settlement. The Court is also willing to enlist Magistrate Judge Boylan's assistance in settlement discussions, if the

---

[6] Pursuant to the Court's May 20, 2010 Order (Doc. No. 28), briefing on the cross-Motions is closed. The Court will advise the parties if it desires additional briefing in advance of the hearing.

parties believe his participation would be beneficial at this stage.  In either case, the parties should jointly communicate their request to the Court as soon as possible.


Dated: June 15, 2010                                              s/Richard H. Kyle
                                                                              RICHARD H. KYLE
                                                                              United States District Judge